UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SUJLA MAHARAJ,

      Plaintiff,

  v.

CALIFORNIA BANK & TRUST,

      Defendant.

NO. CIV. S-11-315 FCD/EFB

MEMORANDUM AND ORDER

----oo0oo----

    This matter comes before the court on defendant California Bank & Trust's ("defendant") motion to compel arbitration of plaintiff Sujla Maharaj's ("plaintiff") complaint against it. Defendant further moves to dismiss the action on the ground that all of plaintiff's claims are subject to binding arbitration, and thus, nothing remains to be litigated in federal court.[1] Plaintiff opposes the motion, arguing (1) that she did not enter an arbitration agreement with defendant, or (2) even if she did enter such an agreement, it is unenforceable as procedurally and

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

1

substantively unconscionable.

Because the court finds that there is no binding arbitration agreement between the parties, it does not reach plaintiff's alternative argument. Defendant's motion must be denied because plaintiff did not agree to arbitrate disputes arising from her employment with defendant.

## BACKGROUND

Plaintiff was employed by defendant from January 16, 1990 through February 4, 2010, when defendant terminated plaintiff's employment. Plaintiff alleges defendant wrongfully terminated her employment while she was on a protected medical leave. By this action, plaintiff seeks to recover damages and attorneys' fees based on common law and statutory claims, including claims under the Americans with Disabilities Act, the Fair Employment and Housing Act, the Family and Medical Leave Act, and the California Family Rights Act. (Compl., filed Feb. 3, 2011.)

Defendant asserts that on May 31, 2007 plaintiff signed and approved an Employee Handbook (the "Handbook") containing an arbitration provision. The Handbook provided that all past, present or future claims and controversies arising out of plaintiff's employment are subject to binding arbitration pursuant to the code of procedures of the American Arbitration Association ("AAA"). (Milloy Decl., filed May 27, 2011 [Docket #14-1], Ex. B.) The Handbook described the nature of the arbitration proceedings, including: (1) that the proceedings are conducted in lieu of any litigation in the courts; (2) the proceedings are binding on both parties; (3) the arbitration award is subject to limited review by a court; and (4) the

1  proceedings are governed by the AAA employment dispute resolution
2  rules, which permit the parties to mutually select an experienced
3  arbitrator, to retain counsel, to conduct discovery, and to seek
4  the same remedies available in a court of law.  (<u>Id.</u>)

5       Plaintiff does not dispute that the June 2007 Handbook,
6  relied upon by defendant in support of the motion, contains the
7  above arbitration provisions.  However, plaintiff contends she
8  did not agree to those provisions.  First, plaintiff emphasizes
9  that the Handbook became effective on June 1, 2007, after she
10 signed, on May 31, 2007, a document entitled "Zions
11 Bancorporation Statement of Compliance with the Employee Handbook
12 and Code of Business Conduct and Ethics" ("Statement of
13 Compliance").  (<u>Id.</u> at Ex. A.)  Designated as "Page 1 of 2," in
14 this document plaintiff agreed that:

> I certify that I am presently in compliance with all
> policies of the Company, including those in the
> Handbook and Code, without exception. I understand
> that in limited cases employees may have been granted
> exceptions to policy prior to the distribution of the
> Handbook and Code.  I have listed below any exceptions that
> I believe apply to me and understand that they are not
> recognized until I receive written approval from my Company
> Human Resources Director or designee below.  In addition,
> I have an ongoing obligation to submit written disclosure
> of exceptions to policies of the Company to my Company
> Human Resources Director or higher authority for approval.

(<u>Id.</u>)  Plaintiff did not list any exceptions to company policy.
(<u>Id.</u>)

     "Page 2 of 2," also entitled "Zions Bancorporation Statement
of Compliance with the Employee Handbook and Code of Business
Conduct and Ethics," provided, among other things, that "*by
signing below*" the employee "acknowledge[s] that [he or she]
received a copy of . . . the Employee Handbook . . . and [has]

3

read [it] and will comply with the policies and standards contained [therein], . . . [including] Section 4.4 of the Handbook, which contains the **MANDATORY BINDING ARBITRATION POLICY AND AGREEMENT**[.]" (emphasis in original.)  This page further provided that the employee understands that "by accepting or continuing employment with the Company, [he or she] agree[s] to use binding arbitration to resolve certain legal claims or controversies with the Company, . . ., including federal Title VII and state civil rights claims, pursuant to the mandatory binding arbitration policy." (Id.)

Plaintiff maintains she never saw Page 2 of the Statement of Compliance, and points out that she did not sign that page. (Pl.'s Decl., filed July 8, 2011 [Docket #16], ¶ 13.)  Instead, plaintiff signed only Page 1 of the Statement of Compliance, and that page did not reference an arbitration provision. (Id.) Plaintiff attests she was never advised that by signing Page 1 she was agreeing to binding arbitration of all disputes with defendant and forfeiting her rights to a judicial forum. (Id. at ¶s 8-12, 14.)  Rather, plaintiff asserts that defendant's Customer Service Manager gave her the Handbook and instructed her to sign Page 1 of the Statement of Compliance, which contained a signature line, and to immediately return the document. (Id. at ¶ 8.)  Plaintiff states that the Manager did not explain the document or any of the contents of the Handbook. (Id. at ¶ 9.) Plaintiff maintains that she did not have time to read the Handbook before signing and returning Page 1 of the Statement of Compliance. (Id. at ¶ 14.)

4

## STANDARD

Employment contracts are governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1, *et seq*; <u>Allied-Bruce Terminix Companies v. Dobson</u>, 513 U.S. 265, 269 (1995). Questions concerning the interpretation and enforceability of arbitration agreements subject to the FAA are determined by federal standards. <u>Moses H. Cone Memorial Hosp. v. Mercury Constr.</u>, 460 U.S. 1, 22-24 (1983); see <u>Slaughter v. Stewart Enters., Inc.</u>, 2007 WL 2255221, at *2 (N.D. Cal. Aug. 3, 2007) ("Federal substantive law governs the question of arbitrability."). However, courts apply ordinary state law contract principles in deciding whether the parties agreed to arbitrate a particular dispute in the first place. <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).

In ruling on a motion to compel arbitration, the court's inquiry is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000). If the finding is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 719 (9th Cir. 1999).

## ANALYSIS

To determine the validity of an agreement, the court considers whether the arbitration clause is procedurally and substantively unconscionable. <u>Davis v. O'Melveny & Meyers</u>, 485 F.3d 1066, 1072 (9th Cir. 2007). Here, the court need not reach

this issue because no agreement to arbitrate exists in the first place.  Defendant relies exclusively on the Statement of Compliance as evidence of plaintiff's assent to the Handbook's arbitration provisions.  However, the Statement of Compliance does not demonstrate plaintiff's acceptance of defendant's arbitration terms.  Indeed, plaintiff signed only Page 1 of the Statement of Compliance, and that page makes no reference to an arbitration provision.  Instead, that page discusses an employee's compliance with company policies.  It requests that the employee state that he or she is in compliance with all of the company's policies or to list any policies for which the employee claims an exemption.  Defendant's arbitration provisions are not a company policy for which employees would need to state their compliance.  Rather, an employee must *agree* or *consent* to the arbitration provisions.

It is Page 2 of the Statement of Compliance which makes that latter request of company employees.  On Page 2, the employee is asked to acknowledge receipt of the Handbook and agree to the "Mandatory Binding Arbitration Policy and Agreement" contained in Section 4.4 of the Handbook.  This page provides that by signing below, the employee acknowledges that by "accepting or continuing employment with the Company, [she] agree[s] to use binding arbitration to resolve certain legal claims or controversies with the Company, . . . pursuant to the mandatory binding arbitration policy."  Plaintiff, however, did not sign this page of the document.  Plaintiff's only signature appears *above*--on Page 1 of

the Statement of Compliance.[2]  Significantly, Page 2 specifically calls for a signature at the end of that page's provisions, and it is undisputed that plaintiff did not sign that page or any page following.

Defendant nonetheless argues that the court can infer plaintiff's acceptance of the Handbook's arbitration terms because the two-page Statement of Compliance was a "single executed document retrieved from [plaintiff's] human resources [file] that [was] kept in [defendant's] ordinary course of [business]."  (Reply, filed July 14, 2011, at 8.)  Defendant's argument is unavailing.  By the Statement of Compliance's express provisions, the employee was asked to sign *after* the description of the arbitration terms.  Plaintiff did not so sign.  Her only signature was on Page 1 which requested that plaintiff state her compliance with all company policies or to list any claimed exemptions to the policies.  She was not asked on Page 1 to agree to an arbitration provision.

The court must give effect, in the first instance, to the plain wording of the contract terms.  <u>First Options of Chicago, Inc.</u>, 514 U.S. at 944.  Doing so in this case mandates the denial of defendant's motion.  There is no evidence that plaintiff entered an agreement to arbitrate any disputes with defendant

---

[2] Defendant attached the two pages of the Statement of Compliance in *reverse order* in support of its motion.  The two page document is clearly marked "Page 1 of 2" and "Page 2 of 2," yet defendant reversed the pages, attaching Page 2 first.  (Ex. A to Milloy Decl.)  This gave the misleading impression to the court that plaintiff had "signed below," as requested on Page 2, since her signature appeared *after* Page 2's references to the arbitration provisions.  The court assumes this was inadvertent and not a deliberate attempt to mislead the court.

arising from her employment.

Defendant's citation to various cases where courts have enforced arbitration agreements similarly contained in employee handbooks are inapposite. See <u>Dittenhaffer v. Citigroup</u>, 2010 WL 3063127 (N.D. Cal. Aug. 2, 2010); <u>Edwards v. Metropolitan Life Ins. Co.</u>, 2010 WL 5059553 (N.D. Cal. Dec. 6, 2010). In those cases, it was undisputed that the employee received the handbook and accepted the arbitration terms; the only dispute was over the arbitration provisions' validity (whether they were procedurally and substantively unconscionable). Here, the threshold issue has not been established--namely, that plaintiff *agreed* to the arbitration terms. Because the court cannot so find, defendant's motion must be denied. <u>First Options of Chicago, Inc.</u>, 514 U.S. at 944.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration and dismiss the case is DENIED.

IT IS SO ORDERED.

DATED: August 2, 2011

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE