IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SUJLA MAHARAJ,                          )
                                        )     2:11-cv-00315-GEB-EFB
              Plaintiff,                )
                                        )
         v.                             )     ORDER GRANTING AND DENYING IN
                                        )     PART DEFENDANT'S MOTION FOR
CALIFORNIA BANK & TRUST,                )     SUMMARY JUDGMENT
                                        )
              Defendant.                )
_____        )

         Defendant moves for summary judgment, or in the alternative,
partial summary judgment on each of Plaintiff's claims. Plaintiff
alleges in her Complaint federal and state employment claims under the
Americans with Disabilities Act ("ADA"), California's Fair Employment
and Housing Act ("FEHA"), the Family and Medical Leave Act ("FMLA"), the
California Family Rights Act ("CFRA"), and wrongful termination in
violation of public policy. For the reasons stated below, Defendant's
motion will be granted and denied in part.

                      **I.  LEGAL STANDARD**

         A party seeking summary judgment bears the initial burden of
demonstrating the absence of a genuine issue of material fact for trial.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is
'material' when, under the governing substantive law, it could affect
the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust and
Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material

fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims,

> [The defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000)(citations omitted).

If the movant satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving [party] cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the

> particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment, . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010) (citation and internal quotation marks omitted).

Evidence must be "view[ed] . . . in the light most favorable to the non-moving party[,]" and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010) (quoting Bank of N.Y.C. v. Fremont Gen. Corp., 523 F.3d 902, 909 (9th Cir. 2008)).

## II. UNCONTROVERTED FACTS

Based upon the respective undisputed facts and supporting evidence submitted by each party under Local Rule 260(b), the following facts are uncontroverted in the summary judgment record:

Plaintiff Sujla Maharaj ("Plaintiff") began working for Defendant California Bank & Trust ("CBT") as a teller at its Millbrae, California branch on January 16, 1990. (Pl.'s Separate Statement of

Disputed Facts ("DF") #1.) In approximately December 2002, Plaintiff transferred to a Customer Service Representative ("CSR") position[1] in Defendant's Sacramento main branch. Id. Plaintiff subsequently obtained promotions up to a CSR III position. Id. Plaintiff remained in Defendant's Sacramento main branch from 2002 until she was terminated in 2010. (Def.'s Separate Statement of Undisputed Facts ("UF") #1.)

Plaintiff took a medical leave of absence from May 15, 2009 until July 27, 2009 ("first leave of absence"). Id. #2. This leave of absence lasted ten weeks and one day. (Decl. of Regina Parker ("Parker Decl.") ¶9, ECF No. 45-4.) Plaintiff was hospitalized on multiple occasions during the first leave of absence and was diagnosed with Rheumatoid Arthritis. (Dep. of Sujla Maharaj ("Pl.'s Dep.") 121:19-124:9, Ex. 1 to the Decl. of Alan Adelman ("Adelman Decl."), ECF No. 57-5; Report of Lloyd Ito, M.D. ("Ito Report"), as Ex. 8 to Adelman Decl., ECF No. 57-12.) Plaintiff submitted eleven signed doctor's notes to Defendant in connection with the first leave of absence, which state Plaintiff was "ill and unable to attend work" or "unable to attend work" during the pendency of her leave. (Parker Decl. ¶6, Exs. B1-B11.)

Plaintiff began a second medical leave of absence ("second leave of absence") on December 28, 2009. (UF #5.) Reports prepared by Plaintiff's health care providers indicate she was hospitalized from December 26, 2009 through January 11, 2012 for diagnoses including a kidney infection. See generally, Report of Anvarali Velji, M.D. ("Velji Report"), Ex. 7 to Adelman Decl., ECF 57-11; Ito Report.) In connection with the second leave of absence, Plaintiff submitted five doctor's notes to Defendant, which state Plaintiff was "ill[,]" "ill and unable

---

[1]      "Customer Service Representative" is Defendant's term for a bank teller. (Decl. of Regina Parker ("Parker Decl.") ¶4, ECF No. 45-4.)

to attend work[,]" or "unable to attend work" through March 31, 2010. (UF #7, Parker Decl. ¶11, Exs. E1-E5.) Plaintiff was released to return to work without restrictions on April 1, 2010. (Parker Decl. ¶11, Ex. E5.)

As of February 2, 2010, Plaintiff had taken more that twelve workweeks of medical leave in the twelve-month period prior to February 2, 2010. (Parker Decl. ¶13.) On February 4, 2010, Defendant sent a letter to Plaintiff, which states in part, "due to our business needs and the expiration of the FMLA Job Protection leave of 12 weeks reached on February 2, 2010, the Sacramento Branch needs to begin the process of filling your Customer Service Representative position to meet the ongoing demands within the Branch." (Parker Decl. ¶15, Ex. G.)

On or about February 25, 2012, Defendant posted on its internal and external job posting websites a full-time teller position at the Sacramento main branch with the title CSR II ("CSR II position"). (UF #15.) On or about March 10, 2010, Defendant offered, and a candidate accepted, the CSR II position. (UF #16.) When Defendant offered the candidate the CSR II position, Defendant was aware that Plaintiff had been released to return to work on April 1, 2010. (Dep. of Regina Parker ("Parker Dep.") 176:15-25, Ex. 3 to Adelman Decl., ECF No. 57-7.) When the candidate accepted the position, Defendant knew she would be unable to start working until April 5, 2010. (Dep. of Deborah Fredrickson ("Fredrickson Dep.") 118:10-119:20, Ex. 4 to Adelman Decl., ECF No. 57-8) And due to new employment orientation and training, the candidate would not be able to work independently until at least April 20, 2010. Id. at 119:23-121:16.

Plaintiff applied for a CSR I position at Defendant's Sacramento Arden branch on March 18, 2010. Id. at 147:3-148:5. The

Sacramento Arden branch CSR I position was filled on April 19, 2010. Id. at 147:23-24, 154:20-22. Plaintiff applied for a CSR III position in Defendant's Gardena, California branch on March 21, 2010. Id. at 97:7-17, 164:4-164:19. The Gardena CSR III position was filed on April 1, 2010. Id. at 164:23-24. Plaintiff applied for a CSR II position in Defendant's San Mateo, California branch on April 12, 2010. Id. at 97:21-98:9, 156:25-157:18. The San Mateo CSR II position was filed on May 3, 2010. Id. at 157:7-15. Plaintiff indicated her willingness to relocate on both the San Mateo and Gardena job applications. Id. at 94:14-25, 158:8-13, 165:3-6.

### III. DISCUSSION

### A.  Disability Discrimination under the ADA and the FEHA

Defendant seeks summary judgment on Plaintiff's disability discrimination claims under the ADA and the FEHA arguing Plaintiff cannot satisfy her initial burden of establishing a prima facie case of discrimination. (Def.'s Mem. of P.&A. in Supp. of Mot. for Summ. J. ("Mot.") 1:28-2:2.) Defendant further argues that "[e]ven if Plaintiff could establish a prima facie case, . . . [Defendant] ha[d] legitimate, nondiscriminatory reasons for its employment decisions, and Plaintiff cannot meet her burden of establishing specific, substantial evidence of pretext for [Defendant's] employment decisions." Id. at 2:5-8.

When considering motions for summary judgment in employment discrimination cases under federal and state law, federal courts apply the McDonnell Douglas burden-shifting scheme as a federal procedural rule. Dawson v. Entek Intern., 630 F.3d 928, 934-36 (2011)(stating the McDonnell Douglas burden-shifting framework applies to state discrimination claims "regardless of th source of the federal court's

1 subject matter jurisdiction over [the state] claim[s,]" i.e. diversity

2 or supplemental).

3        The burden-shifting analysis of McDonnell Douglas Corp. v.

4 Green, 411 U.S. 792 (1973) has three steps. Davis v. Team Elec. Co., 520

5 F.3d 1080, 1089 (9th Cir. 2008). "The employee must first establish a

6 prima facie case of discrimination." Id.  To establish a prima facie

7 case of disability discrimination under both the ADA and the FEHA,

8 Plaintiff must show: "(1) [she] is a disabled person within the meaning

9 of the statute; (2) [she] is a qualified individual with a disability;

10 and (3) [she] suffered an adverse employment action because of [her]

11 disability." Hutton v. Elf Atochem N. Am., Inc., 273 F.3d 884, 892 (9th

12 Cir. 2001); Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864,

13 886 (2007) (requiring a Plaintiff establish the following for a FEHA

14 claim: "(1) [she] suffers from a disability; (2) [she] is otherwise

15 qualified to do [her] job; and, (3) [she] was subjected to adverse

16 employment action because of [her] disability").

17        An individual is "qualified" under both the ADA and the FEHA

18 if he or she is able to perform the essential functions of the

19 employment position that he or she holds or desires with or without

20 reasonable accommodation. Samper v. Providence St. Vincent Medical Ctr.,

21 675 F.3d 1233, 1237 (9th Cir. 2012)(discussing the meaning of "qualified

22 individual" under the ADA); Green v. State, 42 Cal. 4th 254, 264 (2007)

23 (stating "the FEHA and the ADA both limit their prospective scope to

24 those employees with a disability who can perform the essential duties

25 of the employment position with reasonable accommodation").

26        "If the plaintiff establishes a prima facie case, the burden

27 of production-but not persuasion-then shifts to the employer to

28 articulate some legitimate, nondiscriminatory reason for the challenged

action." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1062 (9th Cir. 2002).

"Finally, if the employer satisfies this burden, the employee must show that the 'reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" <u>Davis</u>, 520 F.3d at 1089 (quoting <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1123-24 (9th Cir.2000)).

### 1)   Prima Facie Case of Discrimination

Defendant does not challenge Plaintiff's ability to satisfy the first element of her prima facie case for disability discrimination, i.e. whether she was "disabled" when Defendant decided to fill her position on February 4, 2010. Therefore, the issues to be decided are whether Plaintiff was a "qualified individual" at that time, and whether Defendant filled the position "because of" her disability.

Defendant contends Plaintiff "was not a 'qualified individual with a disability' . . . because at the time that [Defendant] posted and filled the teller position . . . , Plaintiff was . . . ill and unable to work at all . . . ."(Mot. 12:13-19.) Defendant argues, "[a] person who is not able to work at all is not a qualified individual with a disability under the ADA and/or the FEHA." <u>Id.</u> at 12:20-22. Defendant further argues that Plaintiff's disability discrimination claims should be dismissed in their entirety "for the additional reason that Plaintiff cannot raise a genuine issue of material fact that CBT knew of Plaintiff's alleged disability" when it filled her position. <u>Id.</u> at 14:7-9. Defendant contends: "[u]nless Plaintiff can raise a genuine issue of material fact regarding [Defendant's] knowledge of Plaintiff's alleged disability at the time it undertook the alleged adverse

1  employment decisions, [Defendant] cannot be liable to Plaintiff for ADA

2  and/or FEHA disability discrimination." Id. at 14:9-12.

3       Plaintiff counters that she was a "qualified individual,"

4  because she could perform the essential functions of her position with

5  the reasonable accommodation of a finite leave of absence until April 1,

6  2010. (PL.'s Mem. of P.&A. in Opp'n to Def.'s Mot. ("Opp'n") 11:14-21,

7  12:2, ECF No. 57.) Plaintiff also argues that she was a "qualified

8  individual" because she could "perform the essential functions of . . .

9  other vacant job[s] within the company[,]" and "reasonable

10 accommodation[s] include transfer to a vacant position for which the

11 employee is qualified, absent undue burden to the employer." Id. at

12 12:3-14. Plaintiff further rejoins, "Plaintiff kept Defendant's

13 management fully informed regarding [her] health status[,]" "Defendant

14 never asked for more information or documentation than Plaintiff was

15 providing, and Defendant had all the certainty that Defendant needed

16 regarding Plaintiff's ability to work." Id. at 2:19, 3:3-4.

17       A genuine issue of material fact exists concerning whether

18 Plaintiff is a "qualified individual" under both the ADA and the FEHA.

19 Although Plaintiff's doctor's notes indicate she was unable to work at

20 the time Defendant decided to fill her position, she was released to

21 work without restriction on April 1, 2010, and

22       [n]umerous courts have held that "[h]olding a job
         open for a disabled employee who needs time to
23       recuperate or heal is in itself a form of
         reasonable accommodation and may be all that is
24       required where it appears likely that the employee
         will be able to return to an existing position at
25       some time in the foreseeable future."

26 Kranson v. Fed. Exp. Corp., No. 11-cv-05826-YGR, 2012 WL 4715337, at *8

27 (N.D. Cal. Oct. 1, 2012)(quoting Jensen v. Wells Fargo Bank, 74 Cal.

28 App. 4th 245, 263 (1999)). "[W]here a leave of absence would reasonably

accommodate an employee's disability and permit [her], upon [her] return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA." Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1135 (9th Cir. 2001)(citing Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir. 1999)). Further, Plaintiff has presented evidence that she applied for vacancies after she learned that she was released to work as of April 1, 2010, and reassignment to a vacant position for which the disabled employee is qualified are also recognized reasonable accommodations. See Dark v. Curry Cnty. 451 F.3d 1078, 1089 (9th Cir. 2006)(discussing reassignment to vacant positions under the ADA); Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 227 (stating "FEHA lists as reasonable accommodation reassignment to a vacant position").

A genuine issue of material fact also exists on the issue whether Defendant was aware of Plaintiff's disabilities. Although Defendant contends it was unaware of Plaintiff's disabilities when it elected to fill her position, Plaintiff has presented contrary evidence. Plaintiff testified that in May 2009, she told her direct supervisor, Doolee Kim, and the branch customer service manager, Susan Tamai, that she suffered from arthritis. (Pl.'s Dep. 43:16-44:11; 46:7-13.) Tamai testified that when Plaintiff was on medical leave, she knew Plaintiff's health was "quite serious," and that Plaintiff had a "prolonged hospitalization." (Tamai Dep. 53:13-54:8.) Tamai also testified that although she could not recall any specifics concerning Plaintiff's health condition at the time of her deposition, she previously knew what her "underlying health conditions" were. Id. at 55:8-21. Defendant's Human Resources Generalist, Regina Parker, testified that she was "aware that [Plaintiff] had been hospitalized on multiple occasions[,]" and was

told that she had "kidney issues" in or around January of 2010. (Parker
Dep. 49:1-50:9.) Plaintiff's husband's deposition testimony on this
subject is as follows:

> Q.   And you don't recall what you had told Susan
>      Tamai?
>
> A.   What I have told?
>
> Q.   Correct.
>
> A.   Well most of them, I told them what was her
>      condition and the doctor's note was given and
>      when she would be okay to come back to work.
>
> Q.   And what did you, when you talked to Susan
>      Tamai or Doole Kim, what did you tell them
>      about Sujla's condition?
>
> A.   Condition, I would tell them, yes.
>
> Q.   And what specifically did you tell them?
>
> A.   Whatever the doctors told us, I tell them.

(Dushyant Maharaj Dep. 62:19-64:16, attached as Ex. 6 to Adelman Decl.,
ECF No. 57-10.)

      **2)   Pretext**

        Defendant argues, "[a]ssuming, *arguendo*, that Plaintiff could
establish a *prima facie* case of disability discrimination . . . [t]here
are legitimate, nondiscriminatory reasons for the alleged adverse
actions." (Mot. 16:20-24.) Specifically, Defendant argues that it "had
a legitimate business need for a full-time customer service
representative at the Sacramento Main Branch" because as of February 4,
2010, "[Defendant] did not have sufficient staff to meet the needs of
the [Sacramento main] branch." Id. 16:26-28. Defendant further contends
that Plaintiff cannot establish . . . that [this business need] w[as] a
pretext for discrimination" in light of the uncertainty of whether and
when Plaintiff was returning . . . ." Id. 17:28-18:6.

1      Plaintiff has presented evidence which raises a triable issue
2  of fact regarding whether Defendant's staffing needs necessitated
3  Plaintiff's position be filled in February of 2010. Defendant did not
4  post the job opening for Plaintiff's position until February 25, 2010,
5  three weeks after it notified Plaintiff it had decided to fill her
6  position. And, Defendant ultimately offered the position to a candidate
7  who was unable to start until April 5, 2010, four days after Plaintiff
8  was released to return to work without restrictions. Further, Regina
9  Parker gave deposition testimony that around the time Defendant filled
10 Plaintiff's position, another teller resigned, and Defendant "decided to
11 replace [only] one [of the teller] position[s] and not replace both."
12 (Parker Dep. 138:8-139:15.) Parker testified concerning the Sacramento
13 main branch's business needs as follows:

14      Q.   Was there anything different in business
              conditions between May of '09 and January,
15            February '010 other than this other teller or
              customer service rep leaving at some point in
16            '010.

17      A.   Not that I'm aware of.

18      Q.   And do you know how that position was filled?

19      A.   Which position?

20      Q.   The other customer service position in
              [Plaintiff's] branch that came open?

21

22      A.   I believe they only decided to replace one
              position and not replace both.

23      Q.   Why not? Why?

24      A.   Just staffing, model, business decision, I'm
              not –

25

26      Q.   So business was such that the bank,
              [Plaintiff's] branch, determined they didn't
27            even need three customer service reps, they
              could operate with only two?

28      A.   Yeah, but I believe they had more than that. I
              think they had four at one time, they had two

                                    12

gone, now they only had two, so they needed
three.

Q.   Okay.

A.   Also someone reduced their hours, went to part
time, so that's why they decided to go ahead
and post it.

Q.   Do you know what led to [Plaintiff's] branch
in '010 needing one less teller or customer
service rep than they had previously?

A.   I would say business, the way business was
going.

Q.   Slowed down?

A.   Somewhat. I think there was an evaluation of
the branch itself, and did we need five
people, probably not. You know, so there was
some of that because we did let go one of the
[customer service managers] because we had
. . . two . . . so there was a branch review.

Q.   So you let go of a branch supervisor?

A.   Uh-huh.

Q.   When was that?

A.   2011.

(Parker Dep. 138:8-139:19.) Susan Tamai also testified regarding the

Sacramento main branch's decision to reduce its Customer Service

Managers from two to one. (Tamai Dep. 156:22-159:3.) Defendant did not

"add anyone to the branch to help perform the duties [the second

Customer Service Manager] was performing[,]" and Defendant did not "do

anything to take away certain tasks and responsibilities from [the]

branch to make up for the fact that [it removed] one of [the] managerial

[positions]." Id. at 158:12-14, 159:4-12. Although this change occurred

in 2011, not in February of 2010 when Defendant decided to fill

Plaintiff's position, Tamai testified that nothing "significant

change[d]" in the Sacramento main branch's workload between January of

2010 and January of 2011. Id. at 159:20-160:1.

1   "These are specific and substantial facts from which a
2   reasonable jury could find that Plaintiff's disability was a motivating
3   factor in [Defendant's] decision to [fill] h[er] position." <u>Kranson</u>,
4   2012 WL 4715337, *9.

5   For the stated reasons, Defendant's motion for summary
6   judgment on Plaintiff's disability discrimination claims alleged under
7   the ADA and the FEHA is denied.

8   **B.   FEHA Claims for Failure to Provide a Reasonable Accommodation**
9   **and Failure to Engage in the Interactive Process**

10   Defendant also seeks summary judgment on Plaintiff's FEHA
11   claims in which Plaintiff alleges Defendant failed to engage in the
12   interactive process and failed to reasonably accommodate her, as
13   proscribed by California Government Code section 12940, subsections (m)
14   and (n). Defendant argues "Plaintiff's inability to establish a claim
15   for disability discrimination . . . is fatal to [these] claims . . . ."
16   (Mot. 18:9-11.) Defendant further argues, "[e]ven if Plaintiff were able
17   to establish a triable issue of fact regarding her disability
18   discrimination . . . , Plaintiff cannot establish a triable issue of
19   fact regarding her claims for alleged failure to provide reasonable
20   accommodation and/or to engage in an interactive process" because "[t]he
21   duty of an employer to reasonably accommodate an employee's disability
22   does not arise until the employee gives the employer notice of [her]
23   disability and physical limitations[,]" and "Plaintiff never provided
24   [Defendant] with medical documentation or information identifying her
25   alleged disability and any resulting limitations." <u>Id.</u> 18:14-17, 18:28-
26   19:2, 19:22-26. However, a genuine issue of material fact exists on the
27   issue whether Defendant was aware of Plaintiff's disability and
28   limitations. Therefore, this portion of Defendant's motion is denied.

C.   **FMLA & CFRA Claims**

Defendant also moves for summary judgment on Plaintiff's fifth and sixth claims alleged under the CFRA and the FMLA, respectively, arguing "an employee's right to reinstatement under the FMLA and CFRA applies only when the employee returns to work and/or is able to perform his or her job duties after the expiration of 12 workweeks of protected leave[,]" and Plaintiff was not released to return to work at the expiration of her twelve week leave period. (Mot. 7:2-6, 7:19-22, 9:1-9.) Defendant further argues that Plaintiff cannot establish a prima facie case of retaliation under the FMLA or CFRA because the "eight and one-half months" time delay between "Plaintiff's termination and her exercise of protected CFRA/FMLA leave . . . coupled with the absence of any direct evidence of discrimination by [Defendant] are fatal to Plaintiff's claim that her termination somehow connected to her exercise of protected leave."[2] Id. at 10:14-21.

Plaintiff opposes Defendant's motion on her CFRA/FMLA claims on three separate grounds. Plaintiff argues Defendant violated her rights under the CFRA and the FMLA by 1) terminating her employment while she was taking a CFRA/FMLA protected leave, 2) failing to designate her medical leave as CFRA/FMLA qualifying and/or failing to notify her regarding her right to reinstatement under CFRA/FMLA, and 3) "refusing to re-hire Plaintiff upon [her] being released to return to work" in retaliation for taking CFRA/FMLA protected leave. (Opp'n 18:4-8, 18:16-20, 19:7-12, 19:17-19, 19:24-25, 20:13-15.)

---

[2]   Defendant contends Plaintiff's employment was "formally terminated" effective December 29, 2010, not when it notified her on February 4, 2010, that it was going to begin the process of filling her position. (Parker Decl. ¶ 21, Ex. H; see also Def.'s Reply 3:22-23.)

Concerning Plaintiff's second theory of CFRA/FMLA liability, Defendant replies: "any lack of notice could not have had any effect on Plaintiff's exercise of [her] CFRA/FMLA rights." (Def.'s Reply 3:8-10, ECF No. 59.) Defendant argues, "[u]nlike an employee who is able to work part time or who is caring for a sick relative, here, the undisputed facts establish that Plaintiff was unable to work at all during the [f]irst or second Leave of Absence . . . [or] at the conclusion of her FMLA/CFRA leave[, t]herefore, any lack of notice regarding Plaintiff's CFRA/FMLA rights does not create any CFRA/FMLA liability . . . ." Id. at 3:5-10.

Both the CFRA and the FMLA "entitle[] eligible employees to take up to 12 unpaid workweeks in a 12-month period" for a "serious health condition." Rogers v. Cnty. of Los Angeles, 198 Cal. App. 4th 480, 487 (2011)(discussing the CFRA and the FMLA)(citing CAL. GOV'T CODE § 12945.2(a) and 29 U.S.C. § 2612(a)(1)(D)). Further, an employee who takes leave under CFRA/FMLA has a "right to return to his or her job or an equivalent job after using protected leave." Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001)(discussing reinstatement rights under the FMLA)(citing 29 U.S.C. §2614(a)); see also Rogers, 198 Cal. App. 4th at 355 (citing 12945.2(a)). However, "an employer does not violate the FMLA [or the CFRA] when it [terminates] an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." Edgar v. JAC Products, Inc., 443 F.3d 501, 506-07 (6th Cir. 2006)(discussing FMLA); see also Rogers, 198 Cal. App. 4th at 488 ("CFRA's reinstatement right only applies when an employee returns to work on or before the expiration of the 12-week protected leave . . . .").

Further, the CFRA and the FMLA "plainly prohibit[] the use of [statutory]-protected leave as a negative factor in an employment decision." <u>Bachelder</u>, 259 F.3d at 1125; <u>see also</u> <u>Rogers</u>, 198 Cal. App. 4th at 490-91 ("The CFRA provides that '[i]t shall be an unlawful employment practice for an employer to . . . discriminate against . . . any individual because of . . . (1) [that] individual['s] exercise of the right to . . . medical leave provided by' the CFRA.")(quoting CAL. GOV'T CODE 12945.2(l)). Plaintiff is required to establish a "causal connection" between her taking statutory-protected medical leave and the employment decision at issue to succeed under this type of CFRA/FMLA claim. <u>Rogers</u>, 198 Cal. App. 4th at 359-60 (discussing CFRA "retaliation" claim); <u>See also</u> <u>Bachelder</u>, 259 F.3d at 1125 (stating a plaintiff can satisfy her burden of proving that the "taking of FMLA-protected leave constituted a negative factor in the decision to" take an adverse employment action "by using either direct or circumstantial evidence, or both").

It is undisputed that Plaintiff was provided twelve weeks of medical leave, and that the twelve weeks of leave expired on February 2, 2010. It is also undisputed that Plaintiff was unable to return to work as of February 2, 2010. Plaintiff's doctor's notes "are sufficient to establish that Plaintiff was not able to engage in the essential functions of [her] job." <u>Jackson v. Simon Property Group</u>, 795 F. Supp. 2d 949, 964 (N.D. Cal. 2011). Therefore, Defendant is entitled to summary judgment on Plaintiff's CFRA and FMLA claims to the extent they are premised on Plaintiff's first theory of liability, i.e. that Defendant "terminated" her employment during her second leave of absence. <u>See</u> <u>Edgar</u>, 443 F.3d at 506-07; <u>see also</u> <u>Rogers</u>, 198 Cal. App. 4th at 488.

Defendant is also entitled to summary judgment on Plaintiff's CFRA and FMLA claims, to the extent they are premised on Plaintiff's second theory of liability, i.e. that Defendant violated these acts by failing to properly designate Plaintiff's leaves of absence as CFRA/FMLA qualifying leaves and/or failing to adequately notify Plaintiff of her right to reinstatement under CFRA/FMLA.

> Accepting as true . . . that Defendant failed to inform Plaintiff that the leave it was providing h[er] was designated [CFRA/FMLA leave,] . . . no rational finder of fact could conclude that Plaintiff's exercise or attempted exercise of h[er] [CFRA/FMLA] rights was in any way affected by Defendant's failure to inform h[er] that the Act[s] entitled h[er] to a leave of up to 12 work weeks . . . . "Assuming arguendo that Plaintiff should have been given more explicit notice than was given . . . Plaintiff's right to reinstatement could not have been impeded or affected by the lack of notice because h[er] leave was caused by a serious health condition that made h[er] unable to perform the functions of h[er] position, . . . and it is undisputed that that inability continued for [approximately] two months after the end of h[er] 12-week [statutory] leave period. Any lack of notice of the statutory 12-week limitation on [CFRA/FMLA] leave could not rationally be found to have impeded Plaintiff's return to work. . . . [T]o the extent that [P]laintiff contends that the assumed right to notice stands as an independent right . . . , and that an employee may sue the employer for failure to give notice even if that failure in no way affected the employee's leave, benefits, or reinstatement, we reject that contention."

Jackson, 795 F. Supp. 2d at 965 (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161-62 (2nd Cir. 1999))(internal brackets and quotation marks omitted).

However, Plaintiff has presented evidence which creates a genuine issue of material fact preventing summary judgment in favor of Defendant on Plaintiff's third theory of CFRA/FMLA liability, i.e. that Defendant refused to re-hire Plaintiff after she was released to return

to work in retaliation for taking CFRA/FMLA protected leave. Plaintiff applied for a vacant teller position in Defendant's San Mateo office after she was released to return to work without restrictions. (Fredrickson Dep. 156:25-157:15.) Deborah Fredrickson, one of Defendant's human resources staff, gave deposition testimony that Plaintiff was qualified for the San Mateo position, but was not considered for the position because "she lived in Sacramento . . . and applied for a position in San Mateo." Id. at 157:16-22. However, Plaintiff's application for the San Mateo opening indicated that she was willing to relocate, and Fredrickson testified that she called Plaintiff concerning her application for the San Mateo position, and Plaintiff responded that "she was open to opportunities in other locations . . . ." Id. at 70:12-71:14, 94:14-25, 158:4-10. Fredrickson also testified that if an applicant is qualified for a position and is willing to relocate, the fact that they do not live in the city where the position is held is not "a basis to reject their application." Id. at 158:11-17. Fredrickson's testimony belies Defendant's contention that it had a legitimate, non-discriminatory reason to reject Plaintiff's application for the San Mateo position.

Plaintiff also presented deposition testimony from two of Defendant's employees, from which a reasonable inference could be drawn that Defendant refused to rehire Plaintiff because she took protected medical leave. Regina Parker testified that when she spoke to the Sacramento main branch about filling Plaintiff's position in early February 2010, branch staff had an ongoing concern that Plaintiff would be unable to return to work "even when the doctor notes reflected she'd be able to return in the very near future." (Parker Dep. 61:4-63:16.) And Susan Tamai testified regarding Plaintiff's absences as follows:

Q.    What was [Plaintiff's] attendance like?

A.    Oh, that was — I know she had to take off a lot, I know, for doctor's appointments. She did get sick, other than these leaves, I'm talking about.

Q.    Did you see that as a negative attribute of her as an employee having to take time off?

A.    Yeah, she seemed to take off more than a usual employee.

Q.    Due to medical issues?

A.    Yes.

Q.    Did that concern you?

A.    It concerned me to - well, of course it affected the work but she seemed to have a lot of different health issues which I know at one point maybe we discussed how - we were talking to her about, "How come the doctor's can't find out what was wrong with you," because she had certain ailments that seemed to go on and on and on.

      And she'd go to the doctor and they would give her some medicine or either send her home. Then she'd get those symptoms again, and I remember we would tell her, "You really got to talk to your doctors and find out what's wrong."

(Tamai Dep. 114:18-115:14.)

       The referenced evidence "suggests that [Defendant's rejection of Plaintiff for the San Mateo position] may have been tainted with [its] attitude towards her leave." Liu v. Amway Corp., 347 F.3d 1125, 1137 (9th Cir. 2003). Further, "the proximity in time between [Plaintiff's] leave and [her rejection for the San Mateo position] also provides supporting evidence of a connection between the two events." Id.

       For the stated reasons, Defendant's summary judgment motion on Plaintiff's CFRA/FMLA claims is granted, except to the extent it is

1  premised upon Defendant's failure to reinstate her after she was
2  released to return to work.

3      **D.   Wrongful Termination in Violation of Public Policy**

4          Defendant also seeks summary judgment on Plaintiff's wrongful
5  termination in violation of public policy claim. In support of this
6  portion of its motion, Defendant only argues as follows: "Because
7  Plaintiff cannot raise a genuine issue of material fact with respect to
8  any of the claims in her complaint, Plaintiff's claim for violation of
9  public policy likewise fails and should be dismissed." (Mot. 20:3-5.)

10         Since Plaintiff's disability discrimination claims, FEHA
11 failure to accommodate/failure to engage in the interactive process
12 claims and a portion of her FMLA/CFRA claims survive the motion, this
13 portion of Defendant's motion is denied.

14                        **IV. CONCLUSION**

15         For the foregoing reasons, Defendant's summary judgment motion
16 is granted and denied in part as follows:

17         1.   Defendant's motion on Plaintiff's first and second claims
18              alleging disability discrimination under the FEHA and the
19              ADA is DENIED;

20         2.   Defendant's motion on Plaintiff's third and fourth claims
21              alleging failure to accommodate and failure to engage in
22              the interactive process under the FEHA is DENIED;

23         3.   Defendant's motion on Plaintiff's fifth and sixth claims
24              alleging violation of the CFRA and the FMLA is GRANTED
25              except to the extent those claims are premised upon
26              Defendant's failure to rehire Plaintiff for the position
27              to which she applied after she was released to return to
28              work; and

                              21

4.    Defendant's motion on Plaintiff's wrongful termination
      claim in violation of public policy is DENIED.

Dated:  November 14, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge